CASE 41—PETITION EQUITY—JANUARY 13.

# Wells vs. Cowherd's heirs,

APPEAL FROM SHELBY CIRCUIT COURT.

1. A report of commissioners appointed to value the estate of infants, in a proceeding to sell their real estate, which fails to state that the property therein enumerated is all the estate owned by the infants, is not sufficient to authorize the sale. (*Rev. Stat.,* art. 3, *chap.* 86, *page* 592.)

2. Their report must state that "the *interest* of the infants *requires the sale to be made.*" A statement "that if the property above mentioned was sold and the pro-

ceeds *properly invested* it would redound to the interest of said heirs," will not give the court jurisdiction to decree the sale. (*Rev. Stat., art.* 3, *chap.* 86, *page* 592.)

3. Nor has the court jurisdiction unless the bond executed by the guardian of the infants stipulate for a faithful discharge of *all his duties under the statute.* A bond stipulating that the guardian shall "well and truly perform the decree of said court in the premises, and shall, from time to time, obey all orders which may be made in the premises, and shall faithfully *collect* and disburse all moneys arising from the sale of said property as the same shall become due," is fatally defective. (*Rev. Stat., art.* 3, *chap.* 86, *p.* 592.)

Brown & Whitaker, for appellant, cited *Rev. Stat., chap.* 86, *arts.* 2, 3, 4, 5; 16 *B. Mon.,* 296; *Houser vs. Hedden's heirs, MS. opin. July,* 1858; 6 *Dana,* 466; 18 *B. Mon.,* 782; *Ib.,* 390; 1 *Met.,* 284; *Ib.,* 424.

T. B. & J. B. Cochran, for appellees, cited *Rev. Stat., sec.* 1, *sub-sec.* 2, *page* 595; *Ib., chap.* 86, *art.* 5, *sec.* 1; *Civil Code, sec.* 540; 4 *Dana,* 20; *Ib.,* 429; 7 *B. Mon.,* 62; 8 *B. Mon.,* 104; 12 *B. Mon.,* 472; *Rev. Stat., chap.* 86, *art.* 3, *sec.* 2; 1 *Met.,* 284.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

The third article of chapter 86, Revised Statutes, (*p.* 592,) requires that before a court shall have jurisdiction to decree a sale of infants' real estate—

1. Three commissioners must be appointed to report, *and must report* under oath to the court the net value of the infant's real and personal estate, and the annual profits thereof, and *whether the interest of the infant* or idiot *requires the sale to be made.*

2. The guardian of each infant must give a covenant, with good surety, to be approved by the court, *stipulating a faithful discharge of all his duties under this act,* and under any order or decree of the court in pursuance thereof. If the guardian fails to give *such* covenant, the interest of the infant shall not be sold, and any decree, sale, or conveyance thereof shall be void.

The record in this case fails to show either a literal or substantial compliance with these conditions.

The commissioners appointed to value the estate of the infants, report that the infants are possessed of 194 acres of land, worth $50 per acre; ten slaves, worth $4,950; and that "there are cash notes, &c., belonging to said heirs, over and above the debts of the estate, to the amount of $7,800." But whether the

land, slaves, and cash notes mentioned constitute all the estate owned by the infants, is not stated; nor is such an inference authorized by anything contained in the report. Every fact stated by the commissioners may be true; and yet it may be also true that the infants are the owners of other estate, derived from other sources than the will of their father.

But a still more fatal objection to the report is, that it utterly fails to state " whether the *interèst* of the infants *requires the sale to be made.*" The commissioners content themselves with the expression of a very carefully guarded opinion, " that if the property above mentioned was sold, and the proceeds *properly invested*, it would redound to the interest of said heirs." No doubt it would. The same might be said of almost every estate, whether owned by infants or adults. But did the interest of these infants *require* the sale of their interest in this land to be made? That is the point upon which the chancellor must be informed before he can exercise the jurisdiction conferred by the statute; and this information must be furnished by the report of his commissioners. Without their report upon this point, the chancellor had no more jurisdiction to decree a sale than he would have had if the commissioners had failed to report at all. They are as much required to report whether the interest of the infants requires the sale to be made as they are to report the net value and annual profits of their estate. The statute has prescribed in unmistakable terms the duties of the commissioners, and the matters upon which they must report; and has, at the same time, declared, that until these duties shall have been performed, the court shall have no jurisdiction to divest the infants of their title to lands and slaves. With the wisdom or policy of this provision of the statute we have nothing to do. We certainly have as little inclination as we have power to repeal or modify it by forced interpretations, suggested by the hardship of particular cases. The only legitimate inquiry with us is, have the plain requirements of the law, which protects and guards the rights of infants by a strict limitation of the jurisdiction of the courts over their property, been complied with? If not, then, in the language of the statute, " any decree, sale, or conveyance thereof shall be void,"

and must be so pronounced, however inconvenient or disastrous the consequences to particular individuals.

2. The bonds executed by the guardians are also fatally defective. Instead of stipulating a faithful discharge of *all their duties under the statute*, as is expressly required, the bonds given merely stipulate that the guardians shall "well and truly perform the decree of said court in the premises; and shall, from time to time, obey all orders which may be made in the premises; and shall faithfully *collect* and disburse all moneys arising from the sale of said property, as the same shall become due."

Now, the statute requires that the proceeds of such sales, if not reinvested, shall be kept at interest until the death or maturity of the ward, and then paid over, with the accruing interest, to the person legally entitled thereto.

It is obvious that the covenant to *collect* and *disburse* the moneys arising from the sale of said property does not embrace the duty here imposed, and would not bind the surety in the bond for the interest which may accrue upon the fund required to be loaned.

The judgment is therefore reversed, and the cause remanded, with directions to discharge the rule against the appellant.